# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

FILED

JUL - 2 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| IN RE: QIMONDA AG | ) | No: 1:10cv26 |
| BANKRUPTCY LITIGATION | ) | No: 1:10cv27 |
| | ) | No: 1:10cv28 |

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC., | ) | |
|     Appellant, | ) | |
| | ) | |
|     v. | ) | No. 1:10cv26 |
| | ) | |
| QIMONDA AG, *et al.*, | ) | |
|     Appellees. | ) | |

| | | |
|---|---|---|
| ELPIDA MEMORY, INC., *et al.*, | ) | |
|     Appellants, | ) | |
| | ) | |
|     v. | ) | No. 1:10cv27 |
| | ) | |
| QIMONDA AG, *et al.*, | ) | |
|     Appellees. | ) | |

| | | |
|---|---|---|
| NANYA TECHNOLOGY CORP., | ) | |
|     Appellant, | ) | |
| | ) | |
|     v. | ) | No. 1:10cv28 |
| | ) | |
| QIMONDA AG, *et al.*, | ) | |
|     Appellees. | ) | |

## MEMORANDUM OPINION

This appeal from the Eastern District of Virginia Bankruptcy Court ("Bankruptcy Court") presents several novel questions concerning cross-border insolvency proceedings conducted pursuant to Chapter 15 of the Bankruptcy Code, 11 U.S.C. §§ 1501-1532 (2006). Specifically at issue are the following questions:

(i) whether the Bankruptcy Court properly ensured that appellants were sufficiently protected, as required by 11 U.S.C. § 1522, in modifying the discretionary relief previously granted under 11 U.S.C. § 1521;

(ii) whether the Bankruptcy Court erred in concluding that 11 U.S.C. § 365(n) does not apply automatically in a Chapter 15 proceeding; and

(iii) whether the Bankruptcy Court erred in granting comity to German Insolvency Code § 103, which treats executory intellectual property license contracts differently from licenses protected under § 365(n).

## I.

Appellee Qimonda AG ("Qimonda") is a German company with its headquarters in Munich, Germany. From 2006 to the time of its insolvency in 2009, Qimonda, a major producer of dynamic random access memory ("DRAM") chips for computers, operated globally through a number of subsidiaries, including Qimonda North America Corporation and Qimonda Richmond, LLC.[1] Qimonda claims to hold approximately 12,000 patents, including at least 4,000 U.S. patents and over 1,000 pending U.S. patent applications. The remaining patents were issued by Germany and various other countries.

Appellee Michael Jaffé is a German attorney who specializes in insolvency law. In April 2009, the Munich, Germany insolvency court appointed Jaffé as Insolvency Administrator of Qimonda's estate. Thereafter, the U.S. Bankruptcy Court named Jaffé as Qimonda's Foreign

---

[1] In February 2009, these North American Qimonda entities filed for bankruptcy in the District of Delaware under Chapter 11. In that proceeding, the official committee of unsecured creditors for Qimonda North America and Qimonda Richmond filed an adversary complaint alleging that these subsidiaries, and not Qimonda AG, own the rights to approximately 800 patents and patent applications issued by various countries, including the United States. No decision has yet been rendered, and accordingly the appeal at bar remains ripe for disposition.

Representative in the Chapter 15 proceeding.[2]

Between 1995 and 2008, Qimonda (or its predecessor entities) entered into various joint venture and patent cross-licensing agreements with appellants,[3] all of which are international electronics companies that manufacture and sell semiconductors in the United States and abroad. Pursuant to these agreements, Qimonda and appellants have perpetually and irrevocably cross-licensed tens of thousands of patents.

In January 2009, Qimonda commenced insolvency proceedings in Munich, Germany. In the course of the proceeding, Jaffé was appointed Insolvency Administrator of Qimonda's estate. In this capacity, Jaffé then filed in the U.S. Bankruptcy Court a petition for recognition of the German insolvency proceeding under Chapter 15 of the Bankruptcy Code. Following a hearing on the petition, the Bankruptcy Court issued two orders, both dated July 22, 2009. The first order correctly recognized the German insolvency proceeding as a "foreign main proceeding," *i.e.*, an insolvency proceeding "pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517 (setting forth prerequisites to granting recognition).[4] The second

---

[2] Under Chapter 15 of the Bankruptcy Code, a foreign representative is appointed to represent the foreign debtor in U.S. courts and, as such, is authorized to seek relief pursuant to the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 1509, 1512 (creating right of direct access and permitting foreign representative "to participate as a party in interest").

[3] Appellants are Elpida Memory, Inc. ("Elpida"), Infineon Technologies ("Infineon"), Micron Technology ("Micron"), Nanya Technology Corporation ("Nanya"), and Samsung Electronics Co., Ltd. ("Samsung").

[4] In determining where the debtor has the center of its main interest, a court is entitled to presume, in the absence of evidence to the contrary, that "the debtor's registered office . . . [is] the center of the debtor's main interests." 11 U.S.C. § 1516(c). In this case, as noted *supra*, Qimonda is headquartered in Munich, Germany, and thus the presumption was correctly applied.

order (the "July 22, 2009 supplemental order")—issued under § 1521[5]—appointed Jaffé as

Foreign Representative and granted discretionary relief to appellees. Pertinent here is paragraph

4 of the July 22, 2009 supplemental order, which made certain provisions of the Bankruptcy

Code applicable to Qimonda's Chapter 15 proceeding:

> Pursuant to 11 U.S.C. § 1521(a) and in addition to those sections made applicable pursuant to § 1520, the following sections of title 11 of the United States Code are also applicable in this proceeding: §§ 305-307, 342, 345, 349, 350, 364-366, 503, 504, 546, 551, 558.

*In re Qimonda AG*, 1:09-14766 (Bankr. E.D. Va. July 22, 2009) (Supplemental Order).

Thereafter, Jaffé, acting as Qimonda's Foreign Representative, sent letters to Samsung,

Infineon, Eplida, and Nanya electing nonperformance of the patent cross-licensing agreements

between Qimonda and these appellants pursuant to German Insolvency Code § 103.[6] This

prompted at least Samsung and Elpida to respond by sending letters to the Foreign Administrator,

asserting their rights under the Bankruptcy Code to retain licenses for Qimonda's patents. More

specifically, Samsung and Elpida in their letters—consistent with appellants' position on

appeal—argued that § 365(n) does not permit appellees to elect nonperformance of the cross-

licensing agreements. Instead, § 365(n) allows appellants (i) to accept appellees' termination and

sue for damages, or (ii) to reject appellees' termination, thereby continuing the patent licenses.

*See* 3 Collier on Bankruptcy ¶ 365.14. In short, the parties dispute whether their cross-licensing

agreements may be terminated by appellees without appellants' consent under German

---

[5] Section 1521 sets forth the relief a court, in its discretion, may provide to a debtor on a foreign representative's request. *See* 8 Collier on Bankruptcy ¶ 1521.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) ("The relief under section 1521 is discretionary . . . .").

[6] No such letter was sent to Micron.

Insolvency Code § 103, or whether § 365(n) precludes such an action.

Given this dispute, the Foreign Administrator filed a motion in the Bankruptcy Court to amend the July 22, 2009 supplemental order. Specifically, the Foreign Administrator requested that the Bankruptcy Court (i) remove the reference to § 365 made in paragraph 4 or, in the alternative, (ii) insert at the conclusion of paragraph 4 the proviso that "Section 365(n) applies only if the Foreign Representative rejects an executory contract pursuant to Section 365 (rather than simply exercising the rights granted to the Foreign Representative pursuant to the German Insolvency Code)." In support of the motion, the Foreign Representative argued that "[t]he changes requested to the Supplemental Order . . . are consistent with principals [sic] of comity and the core purposes of Chapter 15."

Following briefing and argument, the Bankruptcy Court granted the Foreign Administrator's motion to amend the July 22, 2009 supplemental order over appellants' objections. More precisely, in a November 19, 2009 order issued under § 1522(c),[7] the Bankruptcy Court stated that

> [t]he application of Section 365 to the instant proceeding shall not in any way limit or restrict (i) the right of the Administrator to elect performance or non-performance of agreements under § 103 German Insolvency Code or such other applicable rule of law in the Foreign Proceeding, or (ii) the legal consequence of such election; provided, however, if upon a motion by the Administrator under Section 365 of the Bankruptcy Code, the Court enters an Order providing for the assumption or rejection of an executory contract, then Section 365 shall apply without limitation solely with respect to the contracts subject to such motion.

---

[7] Section 1522(c) states that "[t]he court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief." 11 U.S.C. § 1522(c). Notably, however, in modifying or terminating such relief, the court must ensure that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." *Id.* § 1522(a). This statutory requirement is discussed *infra.*

*In re Qimonda AG*, 1:09-14766 (Bankr. E.D. Va. Nov. 19, 2009) (Order).

Accordingly, the Bankruptcy Court issued a revised supplemental order (the "November 19, 2009 supplemental order") containing the following proviso in paragraph 4:

> provided, however, Section 365(n) applies only if the Foreign Representative rejects an executory contract pursuant to Section 365 (rather than simply exercising the rights granted to the Foreign Representative pursuant to the German Insolvency Code).

*In re Qimonda AG*, 1:09-14766 (Bankr. E.D. Va. Nov. 19, 2009) (Supplemental Order).

In an accompanying memorandum opinion, the Bankruptcy Court gave the following reasons for granting the Foreign Administrator's motion and conditioning the applicability of § 365(n) on the formal rejection of an executory contract under the Bankruptcy Code:

> (i) that the application of § 365 to Qimonda's patent portfolio would substantially undermine German Insolvency Code § 103, which permits an administrator to elect nonperformance of an executory contract;
>
> (ii) that § 365 must give way to the German Insolvency Code because "[a]ncillary proceedings such as the Chapter 15 proceeding pending in this court should supplement, but not supplant, the German proceeding";
>
> (iii) that "[i]f the patents and patent licenses are dealt with in accordance with the bankruptcy laws of the various nations in which the licensees or licensors may be located or operating, there will be many inconsistent results";
>
> (iv) that the inconsistent treatment of Qimonda's patent portfolio may result in the portfolio being "splintered" or "shattered into many pieces that can never be reconstructed";
>
> (v) that the application of § 365(n) to only certain patents in Qimonda's portfolio will "diminish[] the value of these assets" and "may well be detrimental to parties who are or wish to license the patents";
>
> (vi) that it was an "unfortunate but inevitable result" of Qimonda's insolvency and the Foreign Administrator's election of nonperformance under the German Insolvency Code that appellants would be forced "to bid for licenses for which they have already paid"; and

(vii) that "[a]ll patents should be treated the same" on the ground that "[t]here should not be disparate results simply because of the location of a factory or research facility or corporate office."

*In re Qimonda AG*, 2009 Bankr. LEXIS 3786 (Bankr. E.D. Va. Nov. 19, 2009).

On January 11, 2010, appellants filed three separate notices of appeal, with Micron and Nanya filing individually; and Elpida, Infineon, and Samsung filing jointly (the "Elpida appellants").[8] On appeal, appellants argue that the Bankruptcy Court erred in conditioning the applicability of § 365(n) on the Foreign Representative's formal rejection of the parties' cross-licensing agreements under the Bankruptcy Code. More specifically, the parties principally raise four issues:

(i) whether the decision to grant comity to German law is reviewed *de novo* or for an abuse of discretion;

(ii) whether the Bankruptcy Court's decision to amend its July 22, 2009 supplemental order was consistent with the procedural requirements of Rule 60(b), Fed. R. Civ. P., and § 1522;

(iii) whether the Bankruptcy Court erred in holding that § 365(n) applies discretionarily in a Chapter 15 proceeding under § 1521, rather than mandatorily and automatically under § 1520; and

(iv) whether the Bankruptcy Court erred in deferring to the application of the German Insolvency Code under comity principles.[9]

---

[8] These appeals were consolidated on appellees' motion. *See In re Qimonda AG Bankr. Litig.*, 1:10cv26, 1:10cv27, 1:10cv28 (E.D. Va. Feb. 11, 2010) (Order). Jurisdiction is proper pursuant to 28 U.S.C. § 158(a)(1) and Rule 8001, Fed. R. Bankr. P.

[9] In addition, Nanya filed a motion to supplement the record on appeal with, or to take judicial notice of, a memorandum filed by the Foreign Administrator in the Bankruptcy Court after appellants noticed the appeals at bar. The motion must be granted in part with respect to taking judicial notice of the memorandum, yet the motion must be denied in part with respect to supplementing the record on appeal. *Compare Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (judicial notice on appeal), *with Thomas v. Lodge No. 2461 of Dist. Lodge 74 of the Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 348 F. Supp. 2d 708, 711

The parties briefed and argued the issues at a May 14, 2010 hearing, and thereafter submitted supplemental briefs. Accordingly, the appeal is ripe for disposition.

## II.

It is well-settled that a district court "review[s] the bankruptcy court's factual findings for clear error . . . [and] questions of law *de novo*." *See Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 206 (4th Cir. 1997). It is equally well-settled that "decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion." *Morris v. Zabu Holding Co. (In re Morris)*, 385 B.R. 823, 828 (E.D. Va. 2008) (citing *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)). Accordingly, the parties correctly agree that the Bankruptcy Court's discretionary decision to amend its July 22, 2009 supplemental order and limit the applicability of § 365(n) pursuant to § 1522 is reviewed under an abuse of discretion standard. *See id.* The parties also correctly agree that the Bankruptcy Court's refusal to apply § 365(n) automatically under § 1520 is a matter of statutory interpretation requiring *de novo* appellate review. *See United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002) ("We review questions of statutory interpretation *de novo*."). The parties disagree, however, as to whether the Bankruptcy Court's decision to grant comity to German law is properly reviewed *de novo* or for an abuse of discretion.

Typically, a bankruptcy court's decision to defer to foreign law under comity principles is reviewed under an abuse of discretion standard. *See, e.g., JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 422-23 (2d Cir. 2005); *Underwood v. Hilliard (In*

---

(E.D. Va. 2004) (supplementation of appeal record). *See generally* 16A Wright et al., Federal Practice & Procedure § 3956.4 (distinguishing judicial notice from supplementation).

-8-

*re Rimsat, Ltd.)*, 98 F.3d 956, 963 (7th Cir. 1996); *Remington Rand Corp. v. Bus. Sys., Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987); *French v. Liebmann (In re French)*, 320 B.R. 78, 81 (E.D. Va. 2004). Appellants argue, however, that a *de novo* standard should apply here, citing the Second Circuit's decision in *Royal & Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006). There, the Second Circuit—reviewing a district court's decision to dismiss a case in deference to a pending Canadian bankruptcy action—held that "because we are reviewing a court's decision to abstain from exercising jurisdiction, our review is 'more rigorous' than that which is generally employed under the abuse-of-discretion standard," with "'little practical distinction between review for abuse of discretion and review *de novo.*'" *Id.* (quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)). Yet, the appeal at bar does not involve a decision to abstain from exercising jurisdiction; to the contrary, the Bankruptcy Court continues to exercise jurisdiction over the Chapter 15 proceeding. Accordingly, the *Royal & Sun* case is inapposite, and the Bankruptcy Court's decision to defer to German law under comity principles must be reviewed for an abuse of discretion.

## III.

At the threshold, certain appellants challenge on procedural grounds whether the Bankruptcy Court had the authority to amend its July 22, 2009 supplemental order. Specifically, Micron argues that the November 19, 2009 supplemental order did not adhere to the requirements of Rule 60(b), Fed. R. Civ. P. In addition, the Elpida appellants and Micron argue that the November 19, 2009 supplemental order improperly modified the relief previously granted because appellants' interests were not sufficiently protected, as required by § 1522(c). Each of these arguments is addressed in turn.

## A.

Rule 9024, Fed. R. Bankr. P., states that Rule 60, Fed. R. Civ. P., "applies in cases under the [Bankruptcy] Code," with certain exceptions not applicable here. In turn, Rule 60(b) provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" for various reasons, including mistake, inadvertence, surprise, or excusable neglect, or for any other reason that justifies relief. Notably, however, the plain text of the Rule indicates that it applies only to "a *final* judgment, order, or proceeding." Rule 60(b), Fed. R. Civ. P. (emphasis added). Accordingly, "the power of a court to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged and is not limited by the provisions of Rule 60(b)." 11 Wright et al., Federal Practice & Procedure § 2852. This general principle extends to the bankruptcy context, where courts have held that "[i]n the exercise of its inherent equitable powers, the bankruptcy court has authority to modify or vacate its own interlocutory orders." *A & A Sign Co. v. Maughan*, 419 F.3d 1152, 1155 (9th Cir. 1969).

These principles, applied here, compel the conclusion that the Bankruptcy Court did not run afoul Rule 60(b) in issuing the November 19, 2009 supplemental order because that Rule was not applicable. This is so because the Bankruptcy Court's July 22, 2009 supplemental order was an interlocutory order—not a final order—and as such was not subject to the requirements of Rule 60(b). *See Indemnity Ins. Co. of N. Am. v. Reisley*, 153 F.2d 296 (2d Cir. 1945) ("[N]o order in a bankruptcy proceeding is final . . . until the proceeding has been terminated."). Accordingly, the Bankruptcy Court did not err or abuse its discretion by failing to perform the

analysis required under Rule 60(b).[10]

**B.**

Under 11 U.S.C. § 1521, a bankruptcy court, upon recognizing a foreign proceeding under Chapter 15, may discretionarily "grant any appropriate relief" in order to "effectuate the purpose of this chapter and to protect the assets of the debtors or the interests of the creditors." 11 U.S.C. § 1521(a). Thereafter, pursuant to § 1522(c), a bankruptcy court "may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief." *Id.* § 1522(c). Significantly, "[t]he exercise of discretion is . . . circumscribed by the Bankruptcy Code." *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009). Consistent with this, a bankruptcy court, when modifying or terminating relief pursuant to § 1522(c), must ensure that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

Only one reported decision addresses the meaning of the § 1522(a) statutory requirement that the relevant parties' interests be "sufficiently protected." In *In re Tri-Continental Exchange Ltd.*, the bankruptcy court stated in *dicta*, while reviewing generally the tools available to bankruptcy courts administering Chapter 15 proceedings, that

> [s]tandards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions *so as to balance the relief granted* to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another.

349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) (emphasis added). As an example of protections for

---

[10] It is worth noting that although Micron argues that "Qimonda sought grounds for relief from a final order under Rule 60(b)(6)," it is clear that the Foreign Administrator's motion neither invoked nor referenced this Rule.

creditors, courts in other contexts have noted that § 1522(b) expressly permits a bankruptcy court to require the giving of a security or the filing of a bond. *E.g., In re Atlas Shipping*, 404 B.R. at 730 (citing 11 U.S.C. § 1522(b)); *In re Tri-Cont'l*, 349 B.R. at 636-37 & n.12 (same).[11]

In this case, the Bankruptcy Court correctly recognized that § 1522 applies because the November 19, 2009 supplemental order modifies relief previously granted under § 1521.[12] *See In re Qimonda AG*, 2009 Bankr. LEXIS 3786, at *7 (citing § 1522(c) for proposition that "court retains jurisdiction to modify the supplemental order from time to time"). Furthermore, the parties correctly agree that the standard set forth in *In re Tri-Continental* guides the analysis here. Accordingly, the parties' dispute focuses sharply on whether the Bankruptcy Court appropriately balanced the parties' respective interests.

In this respect, the Bankruptcy Court stated in its memorandum opinion that

> [i]f the laws of the various nations in which the patents are being used would be applicable, there will be many different treatments of the patents that have been licensed by Qimonda AG and many different and inconsistent results throughout the world. ... It may well be detrimental to parties who are or wish to license the patents. It is not difficult to envision that if the patent portfolio is splintered without overall administration or control, some parties may be left with incomplete patent protection. Holding an American patent without holding a patent enforceable in the [sic] Europe may significantly restrict its use and utility.

*Id.* at *4-*5. Further, in response to appellants' argument that the application of German insolvency law would inequitably permit the Foreign Representative to terminate appellants'

---

[11] *In re Atlas Shipping* also discusses the meaning of "sufficiently protected," but it does so in a different context, namely the entrustment of a debtors' U.S. assets under § 1521(b). *See* 404 B.R. at 739-40. The discussion there does not inform the analysis under § 1522.

[12] Worth noting is the fact that although the July 22, 2009 supplemental order was issued pursuant to § 1521, the parties dispute whether the Bankruptcy Court was correct to construe § 365(n) to be discretionary relief under § 1521, as opposed to mandatory relief under § 1520.

patent cross-licensing agreements with Qimonda, and then demand that appellants pay new licensing or royalty fees, the Bankruptcy Court noted that "[t]his is an unfortunate but an inevitable result of the bankruptcy of any company." *Id.* at *5.

It is unclear on this somewhat anemic record whether the Bankruptcy Court adequately balanced the parties' interests, as required by § 1522. With respect to appellees, the Bankruptcy Court did not articulate its reasons for concluding that the application of § 365(n) would unavoidably "splinter" or "shatter" the Qimonda patent portfolio "into many pieces that can never be reconstructed," thereby diminishing its value and rendering the Qimonda patent portfolio essentially unsalable. *Id.* at *5. Left unexplained, in particular, is why this is so, given that the continuation of appellants' non-exclusive licenses for an unspecified percentage of the Qimonda patent portfolio would preclude neither the sale of the patents themselves nor the grant of additional, non-exclusive licenses.

With respect to appellants, it is equally unclear whether the Bankruptcy Court considered any information about the nature of the U.S. patents licensed to appellants, and whether cancellation of licenses for those patents would put at risk appellants' investments in manufacturing or sales facilities in this country for products covered by the U.S. patents. At best, the Bankruptcy Court stated (i) that the application of dissimilar bankruptcy laws to different portions of Qimonda's patent portfolio "may well be detrimental to parties who are or wish to license patents," and (ii) that appellees' demanding that appellants pay new licensing or royalty fees was an "unfortunate but an inevitable result" of Qimonda's insolvency. *Id.* at *5-*6. It is not readily apparent why this is so. To begin with, were § 365(n) to apply in this case, appellants would retain valid cross-licenses to certain Qimonda patents, and accordingly any "splintering"

-13-

of Qimonda's patent portfolio would have no effect on appellants' intellectual property interests. In addition, although it is well-established that the central purpose of the Bankruptcy Code is to provide a procedure by which qualified insolvent debtors may obtain a "fresh start," the Bankruptcy Code nonetheless "limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor," as "statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (citation and internal quotation marks omitted).

Accordingly, because this case warrants a remand to the Bankruptcy Court for reasons discussed *infra*, the Bankruptcy Court on remand should articulate more fully and explicitly its basis for modifying the discretionary relief previously granted, consistent with the requirements of § 1522 and *In re Tri-Continental*.

## IV.

Chapter 15 of the Bankruptcy Code, enacted in 2005, cross-references and automatically applies various preexisting provisions of the Code. More specifically, § 1520 enumerates statutory provisions that apply automatically "[u]pon recognition of a foreign proceeding that is a foreign main proceeding." 11 U.S.C. § 1520(a). Yet, § 1521 provides a non-exclusive list of additional relief that may, in the discretion of a bankruptcy court, be granted "where necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditor." *Id.* § 1521(a). *See generally In re Atlas Shipping*, 404 B.R. at 739-42 (discussing automatic and discretionary statutory provisions). At issue on appeal is whether § 365(n)—which governs a debtor's treatment of executory contracts relating to intellectual

-14-

property licenses— applies automatically in Chapter 15 proceedings under § 1520, or whether it applies in the discretion of the Bankruptcy Court under § 1521. Appellants contend that the Bankruptcy Court erred in viewing § 365(n) as discretionary relief that may be withheld and/or conditioned pursuant to § 1521.[13] Instead, according to appellants, § 365(n) applies automatically pursuant to § 1520 on the recognition of a foreign main proceeding under Chapter 15.[14] This question of statutory interpretation is reviewed *de novo. See United States v. Myers*, 280 F.3d at 416.

The principles governing statutory interpretation are well-established. As always, the analysis appropriately begins with the text of the statute. *United States v. Midgett*, 198 F.3d 143, 145-46 (4th Cir. 1999). In the absence of any indication to the contrary, such as an explicit statutory definition, "words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). And where "the statutory language is clear and unambiguous, [the] inquiry ends there as well; [a court] neither resort[s] to an examination of the statute's legislative history nor appl[ies] the traditional

---

[13] Although appellants raised the issue, the Bankruptcy Court in its memorandum opinion did not address whether § 365(n) was automatically made applicable to Qimonda's Chapter 15 proceeding by virtue of § 1520. Yet, there is no dispute that the Bankruptcy Court considered the applicability of § 365(n) relief to be discretionary, as the July 22, 2009 supplemental order applying § 365(n) in the first instance issued pursuant to § 1521.

[14] Although the parties' briefs, if at all, only cursorily address whether the patent licensing agreements at issue here are executory in nature, the parties, by counsel, confirmed in oral argument that the contracts are in fact executory because they impose continuing obligations on the parties. *See* Transcript at 26-27 (May 14, 2010). *See generally RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 157, 164 (4th Cir. 2004) (discussing requirements of executory contracts in bankruptcy proceeding under § 365).

rules of statutory construction." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996).

The analysis concerning whether § 365(n) applies automatically in Chapter 15 proceedings begins with the text of § 1520(a). This provision states, as follows:

> (a) Upon recognition of a foreign proceeding that is a foreign main proceeding—
>> (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;
>> (2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;
>> (3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and
>> (4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a). The absence of a cross-reference to § 365(n)—or even § 365 more generally—in § 1520's specific list of mandatory relief provisions points persuasively to the conclusion that § 365(n) is discretionary relief within the ambit of § 1521. Although it appears that no published judicial decision addresses this question, the only treatise to do so reaches the same result:

> If a chapter 15 debtor has an executory contract or unexpired lease in the United States, the court should consider *whether* § 365 should be made applicable in the chapter 15 case. Because of the complexity of this provision, the court should adopt and apply to the chapter 15 case only those parts of § 365 that are relevant to the case.[15]

---

[15] Samuel L. Bufford, *United States International Insolvency Law 2008-2009*, at 17 (2009) (emphasis added). Notably, the treatise's principal and contributing authors are U.S. Bankruptcy Court judges for the Central and Southern Districts of California, and the Southern District of New York, as well as a retired Superior Court Justice for Ontario, Canada. *See id.* at xiii-xiv.

The conclusion that § 365(n) does not automatically apply in Chapter 15 proceedings is further supported by considering §§ 1520 and 1521 *in pari materia*. *See Va. Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 317 (4th Cir. 2005) ("[A]djacent statutory subsections that refer to the same subject matter . . . must be read *in pari materia* as if they were a single statute."). Simply put, § 1520 plainly lists only those provisions that concern typical, central aspects of Chapter 15 proceedings, while § 1521 permits a Bankruptcy Court to consider the particular circumstances of the debtor and, "at the request of the foreign representative, grant [additional] appropriate relief." Thus, § 1520 lists only three provisions from Chapter 3—namely §§ 361, 362, and 363—that apply automatically, all of which are routinely implicated in Chapter 15 proceedings. To begin with, the mandatory application of §§ 361 and 362 ensures that the debtor is entitled to the automatic stay common to all bankruptcy proceedings, and that creditors are adequately protected while the debtor enjoys the benefits of the automatic stay and, in certain cases, continues to operate its business. *See* 11 U.S.C. § 1520(a)(1) (applying §§ 361 and 362 automatically in Chapter 15 cases).[16] Likewise, § 363 applies in the familiar situation where, as here, the Chapter 15 debtor has property within the territorial jurisdiction of the United States that may be transferred, often in the course of the foreign representative's operating the debtor's business during insolvency. *See id.* § 1520(a)(2)-(3) (applying § 363 automatically in Chapter 15 cases). Notably, a foreign administrator's operation of a debtor's business is so commonplace that § 1520(a)(3) permits the foreign representative to operate the debtor's business as a matter of

---

[16] *See* Bufford, *supra* note 15, at 244 ("The U.S. automatic stay (moratorium) is one of the basic protections given to debtors, creditors, and property of the bankruptcy estate under U.S. bankruptcy law."); *see id.* at 236-37 (discussing purpose of adequate protection provision and its relationship to §§ 362 and 363).

-17-

course in the absence of a court order to the contrary, thereby "preserv[ing] value and eliminat[ing] delay attendant to obtaining permission to do so." Bufford, *supra* note 15, at 258.

By contrast, § 365(n) is not routinely implicated in every bankruptcy. It follows that Congress sensibly left the application of § 365(n) to the discretion of bankruptcy courts, where appropriate. Accordingly, §§ 1520 and 1521, when read together, distinguish between (i) those Bankruptcy Code provisions that are typically implicated by, and central to, Chapter 15 proceedings, and (ii) additional relief that may be appropriate in a more limited number of Chapter 15 proceedings.[17]

The Bankruptcy Court's actions in this case are consistent with this statutory

---

[17] It is worth noting that the Foreign Representative also argues that a literal reading of § 103 precludes the automatic application of § 365(n) in a Chapter 15 proceeding. In particular, § 103(a) states that "chapters 1, 3 [including § 365], and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and that this chapter, sections 307, 362(n), 555 through 557, and 559 through 562 apply in a case under chapter 15." 11 U.S.C. § 103(a). This argument is unpersuasive for two reasons. First, § 103 makes no distinction in Chapter 15 proceedings between provisions that are automatically applicable on the one hand, and discretionary on the other, and is therefore unhelpful here. Second, although a purely literal reading of § 103(a) may support the Foreign Administrator's position, the argument nonetheless must be rejected because the list of applicable provisions in § 103 is not complete. For example, § 103(a) specifies that only § 362(n) applies, but it is well-settled that § 362 applies in its entirety on the recognition of a foreign main proceeding under Chapter 15. This inconsistency is noted in *Collier on Bankruptcy*: "[I]t is difficult to understand why this paragraph [section 362(n)] is applied to chapter 15, as section 1520(a)(1) applies the whole of section 362 to a foreign main proceeding and (n) will not be needed where (a) is not applicable." 2 Collier on Bankruptcy ¶ 103.02 n.2. Thus, that a statutory provision is cross-referenced in § 103(a) is not dispositive as to whether it applies in a given bankruptcy proceeding. Yet, the tension with § 103(a) is resolved by the application of the "basic principle of statutory construction that when two statutes are in conflict, a specific statute closely applicable to the substance of the controversy at hand controls over a more generalized provision." *Farmer v. Employment Sec. Comm'n*, 4 F.3d 1274, 1284 (4th Cir. 1993); *see also* 2 Collier on Bankruptcy ¶ 103.02 ("In those cases where chapters 7, 9, 11, 12, 13 or 15 of the Bankruptcy Code contain specific language that governs the application of the three general chapters, the specific provisions will prevail over the general."). In this case, the more specific list of applicable provisions set forth in §§ 1520 and 1521 controls over the more general terms of § 103(a).

interpretation. Realizing that Qimonda was a party to executory contracts governing property situated in the United States—namely cross-licensing agreements concerning U.S. patents—the Bankruptcy Court initially ordered that § 365 apply in its entirety. *See In re Qimonda AG*, 1:09-14766 (Bankr. E.D. Va. July 22, 2009) (Supplemental Order). Thereafter, the Bankruptcy Court amended the order and conditioned the applicability of § 365(n) on the formal rejection of the parties' cross-licensing agreements. *See In re Qimonda AG*, 1:09-14766 (Bankr. E.D. Va. Nov. 19, 2009) (Supplemental Order). This action did not run afoul § 1520 because § 365 is not among the provisions that apply automatically on the recognition of a foreign proceeding under Chapter 15.[18] Instead, § 365 applies only in the discretion of a bankruptcy court where, as here, circumstances warrant its invocation.

In response, appellants principally contend that § 365(n) applies implicitly under § 1520. This incorporation-by-reference argument proceeds as a basic three-part syllogism. First, § 1520 plainly makes specific reference to the automatic applicability of § 363 where the foreign administrator (i) "transfer[s] . . . an interest of the debtor in property that is within the territorial jurisdiction of the United States," and/or (ii) operates the debtor's business. 11 U.S.C. § 1520(a)(2)-(3).[19] Second, § 363(*l*), in turn, states that "*subject to the provisions of section 365,*

---

[18] As discussed *supra*, however, it is unclear whether the Bankruptcy Court modified the relief granted in a manner consistent with the statutory requirements of § 1522, namely ensuring sufficient protection to interested and affected parties.

[19] The parties correctly do not dispute this first point. *See In re Tri-Cont'l*, 349 B.R. at 639 ("An automatic consequence of recognition of a foreign main proceeding is that § 363 applies.").

trustee may use, sell or lease property . . . notwithstanding [an *ipso facto* clause[20]]." *Id.* § 363(*l*) (emphasis added). And thus third, according to appellants, it follows that § 365(n) applies automatically in Chapter 15 proceedings by virtue of the cross-reference to § 365 in § 363(*l*).

This argument fails because it ignores the specific context in which the prefatory clause, "subject to the provisions of section 365," appears in § 363(*l*). Generally, § 363 sets forth the conditions and procedures by which a debtor or trustee—or in a Chapter 15 proceeding, a foreign representative—may use, sell, and lease the debtor's property. Assets sold in the ordinary course of business are governed by § 363(c), which does not require notice or a hearing, while assets sold outside the ordinary course of business are governed by § 363(b), which requires notice, a hearing, and various other restrictions. *See id.* § 363(b)-(c). Consistent with this, the remaining paragraphs of § 363 address more specific scenarios in which the debtor's property may be sold, imposing certain limitations or conditions on those sales. *See generally* 3 Collier on Bankruptcy ¶ 363.01 (providing overview).

Ample authority holds that § 363(*l*) is "directed solely at making so-called *ipso facto* or bankruptcy-default clauses unenforceable."[21] Although the plain language of § 363(*l*) subjects

---

[20] An "*ipso facto* clause," in the context of § 363(*l*), is a contract provision that "terminate[s] or modif[ies] the debtor's interest in property of the estate based on the debtor's financial condition or the commencement of the bankruptcy case." 3 Collier on Bankruptcy ¶ 363.10[1].

[21] *Abbott Bank-Thedford v. Hanna (In re Hanna)*, 912 F.2d 945, 950 n.8 (8th Cir. 1990); *see also S. Motor Co. v. Cater-Pritchett-Hodges, Inc. (In re MMH Auto. Group, LLC)*, 385 B.R. 347, 365 (Bankr. S.D. Fla. 2008) ("All courts that have considered section 363(*l*) view this statute section as one of a series of Bankruptcy Code provisions . . . that either invalidate, or strictly limit the enforceability of, bankruptcy forfeiture provisions."); 3 Collier on Bankruptcy ¶ 363.10[1] ("Under this provision, parties may not contract out of bankruptcy by placing restrictions on the debtor's use, sale or lease of property triggered by the debtor's bankruptcy . . . .").

the sale of a debtor's property to the protections of § 365, it does so only in the context of rendering *ipso facto* clauses unenforceable. Accordingly, this prefatory clause—"[s]ubject to the provisions of section 365"—is insufficient to apply § 365 referentially to *all* § 363 sales, notwithstanding whether an *ipso facto* clause is implicated. Indeed, where, as here, the patent cross-licensing agreements at issue do not contain *ipso facto* clauses, the sale of property may be effectuated solely under § 363(b) or § 363(c) without resort to § 363(*l*). In this scenario, it strains logic to reason that § 365 would nonetheless apply by virtue of § 363(*l*) when § 363(*l*) itself does not apply. Had Congress intended all sales under § 363 to be subject to § 365, it could have stated so clearly and unambiguously in either (i) § 363(b) and § 363(c), the most general paragraphs found in the section, or (ii) in a separate paragraph not tethered to the *ipso facto* clause restriction, rather than importing § 365 wholesale into § 363 by way of a prefatory clause to § 363(*l*).

Nanya cites one commentator's view that § 363(*l*) applies regardless of whether an *ipso facto* clause is at issue. This argument rests on two rationales: (i) that "a review of the legislative history of § 363(*l*) reveals a clear Congressional intent to subordinate § 363 sales to the provisions of § 365 in its entirety"; and (ii) that "[i]f the proviso ('subject to section 365') were intended to be applicable only with respect to *ipso facto* or bankruptcy clauses, the proviso would have referred specifically to § 365(e)(2) rather than to § 365 generally."[22] These arguments are unpersuasive. To begin with, the legislative history argument fails to address the fact that § 363(*l*) deals specifically with *ipso facto* clauses, and that the prefatory clause concerning the

---

[22] Michael St. Patrick Baxter, *Section 363 Sales Free and Clear of Interests: Why the Seventh Circuit Erred In* Precision Industries v. Qualitech Steel, 59 Bus. Law. 475, 483-84 (2004).

-21-

application of § 365 is made in the context of § 363(*l*). And notably, the legislative history

citation is to a single, conclusory sentence in *Collier on Bankruptcy*, which itself cites only the

session law inserting the prefatory clause. *See* Baxter, *supra* note 22, at 482 & n.58 (citing 3

Collier on Bankruptcy ¶ 363.LH[3][a]). This evidence is insufficient to establish any "clear"

congressional intent with respect to the enactment of § 363(*l*)'s prefatory clause. Likewise, the §

365(e)(2) cross-reference argument is equally unpersuasive because it fails to recognize the other

sections of § 365 that are implicated by § 363(*l*). In other words, § 363(*l*) appropriately cross-

references § 365 generally, rather than specific paragraphs such as § 365(e)(2), because other §

365 paragraphs are relevant to § 363(*l*) and *ipso facto* clauses. For instance, § 365(b)(2) makes

inoperative a provision precluding a bankruptcy trustee from assuming a defaulted executory

contract, absent cure of the default, where the contract contains an *ipso facto* clause.

Significantly, the language of § 363(*l*) and § 365(b)(2) are identical, as both relate to contract

clauses that concern (i) "the insolvency or financial condition of the debtor," (ii) "the

commencement of a case under this title," and (iii) "the appointment of or the taking by a trustee

in a case under this title or a custodian." *Compare* 11 U.S.C. § 363(*l*), *with id.* § 365(b)(2).

Accordingly, the cross-reference in § 363(*l*) to § 365 in its entirety is consistent with the

conclusion that § 363(*l*)—including the prefatory clause incorporating § 365—is limited to

situations in which an *ipso facto* clause is at issue.[23]

---

[23] It is also worth noting that the Baxter article, *see supra* note 22, specifically responds
to, and criticizes, the Seventh Circuit's decision in *Precision Industries, Inc. v. Qualitech Steel
SBQ, LLC (In re Qualitech Steel Corporation and Qualitech Steel Holdings Corporation)*, a case
of first impression at the circuit level that analyzed the relationship between "two distinct
provisions of the Bankruptcy Code: 11 U.S.C. § 363(f), which authorizes the sale of a debtor's
property free of any 'interest' other than the estate's, and 11 U.S.C. § 365(h), which protects the
rights of the lessee when the debtor rejects a lease of estate property." 327 F.3d 537, 540 (7th

Appellants also cite a number of decisions for the proposition that § 363(*l*) does not restrict the automatic applicability of § 365 to *ipso facto* clauses because courts have regularly imposed § 365(n) as a condition of the sale of intellectual property in bankruptcy proceedings absent *ipso facto* clauses.[24] Yet, these decisions do not address the meaning or applicability of § 363(*l*), and in fact do not cite § 363(*l*) at any point. As such, these decisions are not responsive to the Foreign Administrator's argument that § 363(*l*) must be read in light of its clear purpose, namely to clarify the legal effect of *ipso facto* clauses on the sale of a debtor's property. Contrary to appellants' assertions, the cases do not hold that § 363(*l*)'s *ipso facto* clause limitation incorporates § 365 wholesale into § 363.

Importantly, this reading of § 363(*l*) does not lead to the "absurd result" appellants advance. Specifically, appellants contend that if § 365 does not apply automatically in Chapter 15 proceedings, but instead applies only where an *ipso facto* clause is at issue under § 363(*l*), licensees without *ipso facto* clauses in their agreements will never gain the protections of § 365(n). Yet, this argument misunderstands the conclusion reached here, namely that § 363(*l*) does not, *as a matter of course*, subject *all* § 363 sales of a debtor's property to § 365. From this, appellants incorrectly infer that § 365 will *never* apply absent an *ipso facto* clause. It is clear, however, that § 365 *could*, and often *does*, apply where a bankruptcy court orders such discretionary relief. In other words, the precise issue raised, addressed, and resolved here is

Cir. 2003). As such, the author acknowledged that "[a]n examination of the relationship between § 363(f) and § 365(n) [was] beyond the scope of this Article." *Id.* at 499 n.156.

[24] *Compack Cos., LLC v. Johnson*, 415 B.R. 334 (N.D. Ill. 2009); *Shaw Group, Inc. v. Bechtel Jacobs Co., LLC, (In re The IT Group, Inc.)*, 350 B.R. 166 (Bankr. D. Del. 2006); *In re Dynamic Tooling Sys., Inc.*, 349 B.R. 847 (Bankr. D. Kan. 2006); *In re Access Beyond Techs., Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999).

-23-

whether § 365 applies *automatically* in all Chapter 15 proceedings because it is cross-referenced in § 363(*l*), not whether § 365 ever governs the sale of a debtor's property. Nothing said here precludes the discretionary application of § 365 where appropriate under § 1521.

## V.

The conclusion that § 365(n)'s applicability is discretionary under § 1521, rather than mandatory and automatic under § 1520, does not end the analysis. Notwithstanding the Bankruptcy Court's treatment of § 365(n) as discretionary relief under § 1521, appellants argue that the Bankruptcy Court erred in granting comity to German law. As discussed *supra*, the Bankruptcy Court's decision to grant comity is reviewed for an abuse of discretion, which occurs when a court "fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 420 (4th Cir. 2010).

## A.

Principally at issue here are two sections found in Chapter 15 of the Bankruptcy Code. First, § 1509(b)(3) states that "a court in the United States *shall* grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3) (emphasis added). Significantly, however, this directive is subject to a second statutory provision, namely § 1506, which provides that "[n]othing in [Chapter 15] prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." *Id.* § 1506.[25] In addition to disputing whether § 1506 precluded the Bankruptcy Court from

---

[25] *See also* George W. Shuster, Jr., *The Trust Indenture Act and International Debt Restructurings*, 14 Am. Bankr. Inst. L. Rev. 431, 455 (2006) ("Section 1506 is an 'anti-comity' provision, allowing the U.S. court to deny chapter 15 relief if such relief (and, by implication, the

deferring to German Insolvency Code § 103, the parties spill much ink over whether reversal is also warranted on the grounds that the Bankruptcy Court: (i) failed to balance the interests of all parties, as is typical in a comity analysis, *see, e.g., In re French*, 440 F.3d at 153 (listing factors); and (ii) failed to recognize and apply the anti-comity exception for certain bankruptcy proceedings stated in *Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag)*, 961 F.2d 341, 348 (2d Cir. 1992) (holding that deference to foreign insolvency proceeding does not extend to disputes between debtors and third-parties over U.S. property interests). These arguments are unpersuasive because they address the issue already decided by Congress in § 1509, namely whether courts must grant comity to a foreign representative in a Chapter 15 proceeding.

Section 1509 states, in mandatory terms, that "a court in the United States *shall* grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3) (emphasis added).[26] As the Fourth Circuit has explained, in interpreting federal statutes the word "may" evidences "a congressional intent to grant courts . . . discretion," in contrast to the word "shall," which connotes that "Congress clearly did not manifest an intent to confer such discretion."[27] Thus,

_____

applicable foreign insolvency law) violates U.S. public policy.").

[26] That comity principles are central to Chapter 15 is readily apparent. *See* Bufford, *supra* note 15, at 33 ("While comity finds only three specific references in chapter 15, its influence in chapter 15 is pervasive."). For a detailed history of Chapter 15, which is based on the United Nations Commission on International Trade Law's ("UNCITRAL") 1997 Model Law on Cross-Border Insolvency, *see generally id.* at 10-16; Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 Am. Bankr. L. J. 713, 718-19 (2005).

[27] *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 325 (4th Cir. 2008); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) (holding that Congress, in using the phrase "shall order" in a forfeiture statute, "could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied").

under the plain terms of § 1509(b)(3), the Bankruptcy Court lacked general discretion to deny the

Foreign Administrator's request for comity; rather, the Bankruptcy Court could only have refused

to defer to German Insolvency Code § 103 on the ground that applying German law, instead of §

365(n), would be "manifestly contrary to the public policy of the United States" under § 1506.

Put another way, §§ 1509(b)(3) and 1506, read *in pari materia*, provide that comity shall be

granted following the U.S. recognition of a foreign proceeding under Chapter 15, subject to the

caveat that comity shall not be granted when doing so would contravene fundamental U.S. public

policy. Accordingly, the analysis must focus sharply on whether § 365(n) embodies the

fundamental public policy of the United States, such that subordinating § 365(n) to German

Insolvency Code § 103 is an action "manifestly contrary to the public policy of the United

States."[28] 11 U.S.C. § 1506.

---

[28] It is worth noting that the Elpida appellants argue that German Insolvency Code § 103 does not affect appellants' irrevocable, interminable, non-exclusive licenses, and that the Bankruptcy Court therefore erred in interpreting German law. Appellees disagree, arguing that German Insolvency Code § 103 permits the debtor to elect nonperformance of the parties' executory cross-licensing agreements. This dispute is governed by Rule 9017, Fed. R. Bankr. P., which incorporates Rule 44.1, Fed. R. Civ. P. Under Rule 44.1, foreign law determinations are treated as questions of law requiring *de novo* review, although they previously were considered to be questions of fact. *See Sec. & Exchange Comm'n v. Dunlap*, 253 F.3d 768, 777 (4th Cir. 2001); 9A Wright & Miller, Federal Practice & Procedure § 2444. The Bankruptcy Court did not resolve the parties' dispute concerning the content of German law, but it is clear from the Bankruptcy Court's memorandum opinion that it considered German Insolvency Code § 103 and § 365(n) to be at odds. *See In re Qimonda AG*, 2009 Bankr. LEXIS 3786, at *2 ("These rights [provided by § 365] are inconsistent with those provided under the German Insolvency Code."). The Bankruptcy Court's conclusion appears to be correct, as the German Federal Court of Justice has held,

> Sec. 103 [of the Insolvency Code] generally applies to the usage agreement . . . . A license agreement is classified in line with the classification of the lease of rights (*Rechtspacht*) as a contract for the performance of a continuing obligation (*Dauernutzunsgvertrag*). As no immovable property is considered here, the insolvency administrator (*Insolvenzverwalter*) in the insolvency proceedings

-26-

**B.**

In resolving whether the § 1506 public policy exception applies here, it is necessary to

discuss the history of § 365(n), which begins with the Fourth Circuit's decision in *Lubrizol*

*Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756

F.2d 1043 (4th Cir. 1985). *Lubrizol* concerned the question "whether Richmond Metal Finishers

(RMF), a [Chapter 11] bankrupt debtor in possession, should have been allowed to reject as

executory a technology licensing agreement with Lubrizol Enterprises (Lubrizol) as licensee."

*Id.* at 1044. The Fourth Circuit held that RMF was permitted to reject the licensing agreement

under the business judgment rule[29] because to hold otherwise would impermissibly substitute the

court's judgment for the debtor's business judgment, which, in the circumstances, could only be

viewed as sound:

> The testimony of RMF's president, also factually uncontested by Lubrizol,
> indicated that sale or further licensing would be facilitated by stripping Lubrizol
> of its rights in the process and that, correspondingly, continued obligation to
> Lubrizol under the agreement would hinder RMF's capability to sell or license the
> technology on more advantageous terms to other potential licensees.

---

> (*Insolvenzverfahren*) over the assets of any of the contracting parties has, in
> accordance with the prevailing opinions of insolvency law and copyright law
> scholars, a right to elect non-performance (*Nichterfüllungswahl*) with regard to
> such agreements pursuant to Sec. 103 [of the Insolvence Code], taken that the
> agreement has not yet been completely performed . . . .

Bundesgerichtshof [BGH] [Federal Court of Justice] Nov. 17, 2005, 155 Entscheidungen des
Bundesgerichtshofes in Zivilsachen [BGHZ] 87 ¶ 21 (F.R.G.) (certified translation at Elpida
Appellants' Ex. 27 Attach. B).

[29] Under the business judgment rule, "courts should defer to—should not interfere
with—decisions of corporate directors upon matters entrusted to their business judgment except
upon a finding of bad faith or gross abuse of their 'business discretion.'" *Lubrizol*, 756 F.2d at
1047.

*Id.* at 1047. Simply put, it was reasonable under the business judgment rule for RMF, a debtor in bankruptcy, to reject its patent licensing agreement with Lubrizol, thereby increasing the value of the patent at sale or in licensing negotiations.

Notwithstanding this result, the Fourth Circuit noted that Lubrizol's public policy argument was substantial, although not ultimately controlling. Specifically, the Fourth Circuit observed that

> [i]t cannot be gainsaid that allowing rejection of such contracts as executory imposes serious burdens upon contracting parties such as Lubrizol. Nor can it be doubted that allowing rejection in this and comparable cases could have a general chilling effect upon the willingness of parties to contract at all with businesses in possible financial difficulty.

*Id.* at 1048. Nonetheless, the structure and plain language of § 365—which provided for the rejection of all types of executory contracts, including technology licensing agreements—compelled the Fourth Circuit to hold that Congress "plainly provided for the rejection of executory contracts, notwithstanding the obvious adverse consequence for contracting parties thereby made inevitable." *Id.*

Congress overturned *Lubrizol* with the enactment of § 365(n) in the Intellectual Property Bankruptcy Protection Act of 1988 ("IPBPA"), Pub. L. No. 100-506, 102 Stat. 2538. The Senate Report accompanying the enacted version of § 365(n) specifically noted that *Lubrizol* "leaves licensees in a precarious position" by "subject[ing] the licensee to the risk that, upon bankruptcy of the licensor, the licensee would lose not only any future affirmative performance required of the licensor under the license, but also any right of the licensee to continue to use the intellectual property as originally agreed." S. Rep. No. 100-505, at 2-3 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3200, 3201-02. This, according to the Senate Report, was a "fundamental threat to

the creative process that has nurtured innovation in the United States." *Id.* at 3, *as reprinted in*
1988 U.S.C.C.A.N. at 3202. In addition, as noted by one commentator, "[b]ecause many
businesses rely on intellectual property rights as a vital resource for survival, many businesses
were faced with financial ruin due to the precedent which the *Lubrizol* case established."[30] The
IPBPA accordingly "correct[ed] the perception of some courts that Section 365 was ever
intended to be a mechanism for stripping innocent licensee [sic] of rights central to the
operations of their ongoing business," and instead made clear that licensees were entitled to
retain these rights. *Id.* at 4, *as reprinted in* 1988 U.S.C.C.A.N. at 3203.[31] Simply put, "[t]he
IPBPA was Congress' solution to the unjust results that the *Lubrizol* case presented."[32]

Given this, it is clear that Congress carefully considered *Lubrizol*'s public policy
implications and, by overturning *Lubrizol*, took affirmative steps to protect patent licensees from
debtors' termination of patent licenses in bankruptcy proceedings. Whether § 365(n) embodies
the public policy of the United States such that its non-application would be "manifestly contrary
to the public policy of the United States" under § 1506 is the comity merits issue presented here.

## C.

Section 1506 instructs courts in Chapter 15 proceedings to "refus[e] to take an action

---

[30] David M. Jenkins, Comment, *Licenses, Trademarks, and Bankruptcy, Oh My:
Trademark Licensing and the Perils of Licensor Bankruptcy*, 25 J. Marshall L. Rev. 143, 151-52
(1991).

[31] It is worth noting that reference to the legislative history to determine the public policy
embodied in § 1506 is appropriate. As the leading treatise on statutory construction observes,
"[t]he public policy underlying a statutory provision is found by examining the history, purpose,
language and effect of the provision." 2B Sutherland Statutes and Statutory Construction § 56:1.

[32] Jenkins, *supra* note 30, at 149-54.

governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Courts have described the § 1506 public policy exception to be a "safety valve,"[33] which provides a basis "for imposing specific protections" for creditors in Chapter 15 proceedings.[34] Courts have also recognized that Congress's use of the word "manifestly," as a qualifier to "public policy," substantially limits the scope of the exception. As the often-cited House Report accompanying Chapter 15's enacting legislation[35] explains,

> [t]his provision [§ 1506] follows the Model Law article 5 exactly, is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world. The word "manifestly" in international usage restricts the public policy exception to the most fundamental policies of the United States.

H.R. Rep. No. 109-31, at 109 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 172. Accordingly, "[w]hile the legislative history of Section 1506 demonstrates that this exception should be applied narrowly, it should be invoked when fundamental policies of the United States are at risk." *In re Gold & Honey, Ltd.*, 410 B.R. 357, 372 (Bankr. E.D.N.Y. 2009).

Despite courts' widespread agreement that § 1506 may only be used in narrow circumstances, few decisions address precisely when U.S. policy is in fact "fundamental," thus warranting protection under § 1506. Indeed, only four published decisions discuss the matter at any length, three of which conclude that the public policy exception does not apply,[36] and one of

---

[33] *See In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 45 n.27 (Bankr. S.D.N.Y. 2008).

[34] *See In re Tri-Cont'l*, 349 B.R. at 638.

[35] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

[36] *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010); *In re Ernst & Young, Inc.*, 383 B.R. 773 (Bankr. D. Col. 2008); *In re Ephedra Prods.*

which finds that the fundamental policies of the United States are at risk.[37] These decisions are instructive here.

To begin with, all four decisions agree that the fact that application of foreign law leads to a different result than application of U.S. law is, without more, insufficient to support § 1506 protection. This purely results-oriented approach has been rejected on the ground that "'[w]e are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.'" *In re Ephedra*, 349 B.R. at 336 (quoting *Ackermann v. Levine*, 788 F.2d 830, 842 (2d Cir. 1986)); *see also In re Metcalfe*, 421 B.R. at 697 ("The relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical."). Thus, although a conflict between foreign law and U.S. law is a necessary prerequisite to the § 1506 analysis—for absent such conflict the comity and public policy exception questions become moot[38]—that fact alone is not dispositive of whether an action taken in a Chapter 15 proceeding is "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

Instead, in deciding whether to apply § 1506, courts have focused on two factors: (i) whether the foreign proceeding was procedurally unfair;[39] and (ii) whether the application of

_____

*Liability Litig.*, 349 B.R. 333 (S.D.N.Y. 2006).

[37] *In re Gold & Honey*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009).

[38] *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 555 (1987) (Blackmun, J., concurring in part and dissenting in part) ("[T]he threshold question in a comity analysis is whether there is in fact a true conflict between domestic and foreign law.").

[39] *See, e.g., In re Metcalfe*, 421 B.R. at 697 ("The key determination required by this Court is whether the procedures used in Canada meet our fundamental standards of fairness."). It is also worth noting that courts have, on public policy grounds, also declined to recognize foreign proceedings outside of the Chapter 15 context where, unlike here, the foreign proceeding was

foreign law or the recognition of a foreign main proceeding under Chapter 15 would "severely impinge the value and import" of a U.S. statutory or constitutional right, such that granting comity would "severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes" of these rights.[40]

These two principles are evident in *In re Ephedra*. There, the court held that wrongful death claims brought in U.S. courts against an insolvent Canadian-based cross-border distributor of Ephedra—a drug subsequently banned by the U.S. Food and Drug Administration for causing heart attacks and strokes—were subject to a claims resolution procedure devised by the Canadian insolvency court. Although the claimants would have been entitled to a jury trial in the United States under the Seventh Amendment, no corresponding right was made available to them in the Canadian proceeding. Over the objections of certain claimants invoking § 1506, the court rejected the claimants' § 1506 argument. Specifically, the court reasoned that the Canadian insolvency proceeding should be afforded deference, and therefore govern the claimants' wrongful death suits, because "the notion that a fair and impartial verdict cannot be rendered in the absence of a jury trial defies the experience of most of the civilized world." *In re Ephedra*, 349 B.R. at 337.

Significantly, two factors justified the conclusion that deferring to the Canadian proceeding was not an action manifestly contrary to U.S. public policy. First, the court agreed to

---

conducted within a corrupt or unfair judicial system. *See, e.g., Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139, 141-44 (2d Cir. 2000) (affirming decision that Liberian judgment was unenforceable in the United States because "Liberia's courts did not constitute a system of jurisprudence likely to secure an impartial administration of justice" (citation and internal quotation marks omitted)).

[40] *In re Gold & Honey*, 410 B.R. at 372.

defer to the Canadian insolvency proceeding only after the Canadian court adopted certain procedural safeguards the U.S. court requested in order "to assure greater clarity and procedural fairness." *Id.* at 334. And second, in addition to ensuring the foreign proceeding's procedural fairness, the court reasoned that the crux of the claimants' objections was that the absence of a jury in the Canadian proceeding would give them less leverage in settlement negotiations, and that "[d]eprivation of such bargaining advantage hardly rises to the level of imposing on plaintiffs some fundamental unfairness." *Id.* at 337.[41] Thus, the court's decision was consistent with the principles identified above as governing the § 1506 analysis. Deferring to the Canadian proceeding neither (i) subjected claimants to a procedurally unfair foreign proceeding, nor (ii) "severely impinge[d] the value and import" of the claimants' constitutional jury trial right.[42]

*In re Gold & Honey* is the sole published decision in which a bankruptcy court has found § 1506 to apply since the 2005 enactment of Chapter 15, and in this regard it is equally instructive. There, debtor GH LP filed for bankruptcy under Chapter 11, thereby staying automatically all litigation against GH LP under § 362, including a pending Israeli receivership proceeding instituted by First International Bank of Israel ("FIBI").[43] Despite the imposition of

---

[41] The court in *In re Gold & Honey* likewise agreed that the claimants' jury trial rights were not truly impinged because "jury trials in bankruptcy courts are quite rare and not typically invoked in a claims allowance process." 410 B.R. at 372.

[42] In drafting the Model Law, certain UNCITRAL members expressed the view that the words "manifestly contrary" in § 1506 should refer only to those actions that raise constitutional concerns. *See* 8 Collier on Bankruptcy ¶ 1506.1. Although *In re Ephedra* does not address this view expressly, its holding implicitly rejects such a categorical distinction.

[43] Whether the § 362 automatic stay may be applied extraterritorially has been debated by courts and commentators. *See, e.g., In re French*, 320 B.R. at 81-83 (discussing cases and commentary). The resolution of this question does not, however, affect the import of *In re Gold & Honey* here.

the Chapter 11 stay and the bankruptcy court's express warning that any actions taken in the foreign proceeding would be "at [FIBI's] own peril," FIBI continued to prosecute the Israeli receivership proceeding, ultimately persuading the Israeli court to appoint receivers. *See In re Gold & Honey*, 410 B.R. at 362-65 (summarizing prior litigation). This, according to the bankruptcy court, was a clear violation of the § 362 automatic stay and the bankruptcy court's orders. *See id.* at 368-69. Accordingly, the bankruptcy court denied FIBI's subsequent Chapter 15 petition for U.S. recognition of the Israeli receivership proceeding on the ground that

> [r]ecognizing a foreign seizure of a debtor's assets postpetition would severely hinder United States bankruptcy courts' abilities to carry out two of the most fundamental policies and purposes of the automatic stay—namely, preventing one creditor from obtaining an advantage over other creditors, and providing for the efficient and orderly distribution of a debtor's assets to all creditors in accordance with their relative priorities.

*Id.* at 372. Simply put, the denial of FIBI's Chapter 15 petition was necessary to protect a central aspect of bankruptcy proceedings. To hold otherwise would "severely impinge the value and import of the automatic stay" and invite parties to contravene U.S. public policy while simultaneously invoking U.S. courts' jurisdiction. *See id.* ("[C]ondoning FIBI's conduct here would limit a federal courts' jurisdiction over all of the debtors' property . . . as any future creditor could . . . violate the stay in order to procure assets that were outside the United States, yet still under [sic] the United States court's jurisdiction.").

In sum, these cases make clear that at least the following three principles guide courts in analyzing whether an action taken in a Chapter 15 proceeding is manifestly contrary to the public policy of the United States under § 1506.

> (1) The mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy

exception.

(2) Deference to a foreign proceeding should not be afforded in a Chapter 15 proceeding where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections.

(3) An action should not be taken in a Chapter 15 proceeding where taking such action would frustrate a U.S. court's ability to administer the Chapter 15 proceeding and/or would impinge severely a U.S. constitutional or statutory right, particularly if a party continues to enjoy the benefits of the Chapter 15 proceeding.

## D.

The application of these principles to the Bankruptcy Court's decision to condition the applicability of § 365(n) on the formal rejection of an executory contract under the Bankruptcy Code is unclear on this record. Although appellants argued to the Bankruptcy Court that deferring to the application of German Insolvency Code § 103 and conditioning the applicability of § 365(n) was improper because it was squarely at odds with Congress's enactment of the IPBPA and rejection of *Lubrizol*, the Bankruptcy Court neither addressed nor resolved this important issue. Instead, the Bankruptcy Court held, seemingly without qualification, that U.S. courts administering Chapter 15 proceedings must "cooperate on an international basis and . . . give precedence to the [foreign] main proceeding." *In re Qimonda AG*, 2009 Bankr. LEXIS 3786, at *6. Accordingly, it is appropriate to remand the matter to the Bankruptcy Court so that it may, in the first instance, determine whether the relief granted violates fundamental U.S. public policies under § 1506 and the principles discussed here.

## VI.

In sum, because § 365 is discretionary relief that may be applied in a Chapter 15 proceeding pursuant to § 1521, rather than mandatory relief that applies automatically pursuant to

§ 1521, the Bankruptcy Court correctly made § 365 applicable discretionarily. Yet, the Bankruptcy Court did not, as required by § 1522, adequately balance the parties' respective interests. Nor did the Bankruptcy Court address or resolve a significant issue raised by the parties, namely whether conditioning the applicability § 365(n) was a prohibited action "manifestly contrary to the public policy of the United States" under § 1506. For these reasons, the matter must be remanded to the Bankruptcy Court for further proceedings not inconsistent with this Memorandum Opinion.

An appropriate Order shall issue.


Alexandria, Virginia
July 2, 2010


_____
T. S. Ellis, III
United States District Judge